FILED

2007 Jan-31  PM 04:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| JEAN BEVIS, on behalf of D.B., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **CASE NO.:  2:06-CV-0853-RDP** |
| JEFFERSON COUNTY BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.   INTRODUCTION

This is an action for attorney fees and expenses filed pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400 *et seq*., and the Alabama Exceptional Child Education Act, ALA. CODE § 16–39–1 *et seq*.  Plaintiff, Jean Beavis, who is the mother and legal guardian of D.B., the petitioner in the due process administrative action ("Petitioner"), claims she is the prevailing party relative to a Due Process Decision entered on March 10, 2006, by Hearing Officer Wesley Romine.  Hearing Officer Romine ordered Defendant Jefferson County Board of Education ("Defendant") to provide, *inter alia*, Petitioner's counsel with copies of all educational records directly related to D.B., who is a student with a disability.  Consequently, Plaintiff claims she is entitled to her reasonable attorney fees and costs under 20 U.S.C. § 1415.

The court has before it Defendant's Motion for Summary Judgment (Doc. # 10) and Plaintiff's Counter-Motion for Judgment on the Record (Doc. # 13).  For the reasons set forth below, the court finds the decision of the Due Process Hearing Officer, issued March 10, 2006, is due to be reversed to the extent that the hearing officer concluded that Petitioner's parents and their counsel were

entitled to copies of all Petitioner's education records as a matter of law under Alabama Code §

36–21–41 ("Public officers to provide certified copies of writings upon payment of fees therefor;

admissibility in evidence of copies").  The hearing officer's decision is affirmed insofar as it found

that Defendant did not engage in retaliatory conduct by refusing to provide copies of Petitioner's

educational records to his parents or his counsel.  Therefore, Defendant's motion is due to be granted,

and Plaintiff's counter-motion will be denied.  As she is no longer considered a "prevailing party"

under Federal Rule of Civil Procedure 54(d), Plaintiff is not entitled to her costs and attorneys' fees

under 20 U.S.C. § 1415(i)(3)(B).  The court will enter a separate order in accordance with this

opinion.

## II.     STATEMENT OF FACTS

Petitioner is fifteen years old, currently in the ninth grade, and attends a school that is part

of the Jefferson County School System, which Defendant governs.  (Mar. 10, 2006 Due Process

Decision of Hearing Officer Wesley Romine ("DP Decision") 3).  Petitioner is a student with

disabilities as that term is defined by the IDEA, 20 U.S.C. § 1401(3), and corresponding regulatory

provisions, under the classification of "otherwise health impaired."[1]  (DP Decision 3).  As such, he

is eligible to receive special education services from Defendant in accordance with the IDEA.  20

U.S.C. § 1400 *et. seq*.  He is the adoptive son of Plaintiff and resides with her in Birmingham,

Alabama.  (DP Decision 3).

Since his fifth grade year, Petitioner's parents have had significant concerns about his

educational program. (Transcript of Due Process Hearing ("Tr.") 253, 299, 362–63, 369–70, 384–85,

---

[1]Petitioner has been diagnosed with Attention Deficit Hyperactivity Disorder, Obsessive Compulsive Disorder, disruptive behavior disorder, and depressive disorder.  (Pet. Ex. A Admin. R. 30, 48, 86–87, 96–100)

2

Feb. 9, 2006 & Feb. 17, 2006).  Petitioner's disabilities cause him to have academic and behavioral problems.  (Petitioner's ("Pet.") Ex. A Admin. R. 86–87, 96–100, 101–22).  For all times relevant to this case, he has been seeing a psychiatrist and a psychologist.  (Tr. 301–02).

Plaintiff and her late husband repeatedly communicated with Defendant about Petitioner's Individual Education Program ("IEP"), which is developed for every child with disabilities attending a participating school as defined by the IDEA.  20 U.S.C. § 1414(c).  However, they were not always satisfied with Defendant's responses to their questions, and testified at the due process hearing that they wanted a "second opinion" as to whether Defendant was providing Petitioner the special educational program to which he was legally entitled.  (Tr. 253–58, 268, 278, 362–63, 367-70, 543–44).  Susan Wirt, director of exceptional education for Defendant, was aware of the concerns that Plaintiff and her late husband had regarding Petitioner's education. (Tr. 355–56).

Plaintiff's husband ("Mr. Bevis") first attempted to secure copies of Petitioner's educational records in September 2004, when a lawyer from the Alabama Disabilities Advocacy Program ("ADAP") sent a letter to Wirt at his request.  (Pet. Ex. 2 Admin. R.; Tr. 308–309).  Wirt responded to the letter by setting up an appointment for Mr. Bevis and his ADAP representative to meet with Wirt to inspect some of the documents.  (Tr. 141–42).  On September 28, 2004, Mr. Bevis, accompanied by his ADAP lawyer, met with Wirt for several hours, reviewed several of Petitioner's records, and received copies of about one dozen such records.  (Tr. 141–42, 254–65, 282, 309, 480, 540–43).  However, he never received a complete copy of Petitioner's educational records, and, as of the date of the administrative hearing, Plaintiff did not have a copy of the complete record.  (Tr. 253–55, 266, 310).

Because he continued to be unsatisfied with Defendant's responses to questions about his son's education and performance and Petitioner continued to have problems in school,[2] Mr. Bevis sought other legal representation and hired Deborah Mattison (Tr. 267–68).  On May 17, 2005, Petitioner's counsel wrote Defendant,[3] explaining Mr. and Mrs. Bevis's concerns and seeking an independent educational evaluation at public expense.  (Pet. Ex. 3 Admin. R.).  On June 7, 2005, Petitioner's counsel again wrote Defendant, reiterating the Bevis's request for an independent educational evaluation in the areas of behavior management, language, and academic achievement. (Pet. Ex. 4 Admin. R.).  On June 10, 2005, Defendant responded by assuring Plaintiff and her late husband that Petitioner's records would be made available to them for review, but it did not provide any copies of records at that time.  (Pet. Ex. 5 Admin. R. 2).  Defendant further denied Plaintiff and her late husband's request for an independent evaluation, explaining that Petitioner's counsel had cited no disagreement with the evaluations conducted by Defendant, which was a prerequisite to a request for an independent evaluation at public expense.  (Pet. Ex. 5 Admin. R. 2–3).

On July 18, 2005, Petitioner's counsel responded, again asking for copies of D.B.'s records and requesting the Defendant either pay for an independent evaluation or initiate a due process hearing.  (Pet. Ex. 6 Admin. R.).  On August 19, 2005, the Defendant responded, reiterating its position that Plaintiff and her late husband should articulate a disagreement with an existing public

---

[2]On August 20, 2004, Petitioner was arrested at school and removed from school grounds due to a behavioral incident.  (Pet. Ex. A Admin. R. 125–28; Tr. 253–54, 267, 304–305, 308–10). D.B. was also hospitalized in a children's psychiatric hospital in 2004 for behavior which occurred at school.  (Tr. 45–46, 253).  Mr. Bevis also testified that Petitioner was beaten severely by other students on at least two occasions, one of which occurred on September 19, 2003 on a school bus, and, and, again, required hospitalization.  (Resp't Ex. 6 Admin. R. 13; Tr. 308–309).

[3]The letter was addressed specifically to Susan Wirt, Director of Exceptional Education for Jefferson County Schools.

evaluation before Defendant was required to pay for an independent evaluation.  (Pet. Ex. A Admin. R. 79).  The letter also stated that there is a right of access to Petitioner's records, offered to set up a time for inspection of these records, and agreed to entertain any further requests for copies after such inspection.  (Pet. Ex. A Admin. R. 79).

On August 29, 2005, Plaintiff requested an impartial due process hearing under IDEA, citing the Defendant's refusal to provide a copies of D.B.'s records.  (Pet. Ex. A Admin. R. 80–81).  On August 31, 2005, the State of Alabama Department of Education granted the request by appointing an impartial due process hearing officer and directing him to conduct the resolution process, including the due process hearing.  (Pet. Ex. A Admin. R. 82).  Subsequently, Mr. and Mrs. Bevis attended a resolution meeting with Defendant, but the parties were unable to reach an agreement. (Tr. 287–90, 547).

Prior to the hearing, Plaintiff and Petitioner's counsel went to the Jefferson County Board of Education in order to review Petitioner's educational file, which included 999 pages.  (Tr. 71).  They reviewed the records with Jan Harvill, a supervisor employed by Defendant.  (Tr. 397–99).  Upon review, Plaintiff determined that she did not have copies of the majority of Petitioner's records, and she left the room with her counsel several times during the review to discuss certain portions of the records.  (Tr. 397–401).  Defendant offered to explain documents contained in Petitioner's educational records to the Bevises, their attorneys, and their outside service providers, and has provided an explanation of those documents on at least two occasions.  (Tr. 52–53, 113–18, 257–58, 317, 490–95).

On February 1, 2006, Plaintiff again requested copies of Petitioner's records less those already in Plaintiff's possession and Defendant again refused to provide copies of the records.  (Pet.

Ex. 7 Admin. R.; Tr. 161–63).  In November 2005, Mr. Bevis again met with Defendant to try to

settle the case, but the parties were unable to reach a settlement.  (Tr. 550–51).  The impartial hearing

began on February 9, 2006 and lasted two days.

Wirt, the only witness for Defendant, testified that until approximately July 2002, the District

routinely provided copies of students' educational records to parents and/or their attorneys and it

charged a reasonable copying fee.  (Tr. 80–84).  Since then, Wirt explained, Defendant has changed

its policy.  Defendant's current position is that a parent can only receive copies of certain limited

documents, including a student's Individualized Educational Plan (IEP), a Multi-Educational

Discipline Committee form ("MEDC") and a Notice of Parents' Rights under IDEA.[4]  (Tr. 125).  *See*

20 U.S.C. §§ 1414(b)(4)(B), 1414(d)(3)(F), 1415(d)(1), 1415(k)(1)(H).  Otherwise, a parent is

allowed to review the records onsite with a representative of Defendant available to answer

questions.  (Tr. 111–13, 136–39).  Typically, Defendant does not provide copies of educational

records directly to students' attorneys, but will rely upon the parents to transmit copies to their

attorneys or refer the attorney to the Defendant's attorney for any inquiries or document production.

(Tr. 113–14, 134–35, 162–63).

In summary, Plaintiff's position is that she is entitled to receive a copy of all Petitioner's

educational records from Defendant in order to have "meaningful access" to his educational file

within the meaning of the federal statute.  *See*  34 C.F.R. § 300.562 (2006); Ala. Admin. Code R.

290–8–9–.08(2)(c)1.  Citing her inability to fully comprehend all of her son's rights under the law,

as well as her frustration with his continued educational and behavioral problems, Plaintiff insists

---

[4]Defendant has provided copies of certain documents contained in Petitioner's educational
records to Plaintiff, Petitioner's outside service providers, and Petitioner's attorneys.  (Tr.50–51,
83–84, 87–88, 92, 142, 259, 317–318;. Pet. Ex. A1 Admin. R.; Resp't Ex. 6 Admin. R.).

that Defendant's production of copies of all Petitioner's educational records is necessary for her to determine if he is receiving the free and appropriate public education ("FAPE") guaranteed by the IDEA.  (Pl.'s Mem. Resp. Def.'s Mot. Summ. J. & Pl.'s Counter-mot. J. on the R. 10–11).  *See* 20 U.S.C. § 1400(d)(1)(A).  However, the only documents in Petitioner's educational review that were ever withheld from Plaintiff or her late husband, such that they were inaccessible and not available for review, were student statements concerning the August 20, 2004 incident that Defendant and Plaintiff's counsel agreed were confidential.[5]  (Tr. 484–85, 646).

Plaintiff also asserts that Dr. Donna Barnes, Petitioner's clinical psychologist, requires his complete educational file in order to perform a thorough independent evaluation.  (Pl.'s Mem. Resp. Def.'s Mot. Summ. J. & Pl.'s Counter-mot. J. on the R. 11–12).  Dr. Barnes testified that when evaluating a student she needs to review the student's cumulative educational records, to include, *inter alia*, discipline records, standardized tests and other educational evaluations, and behavioral rating scales.  (Tr. 45–49).  Nevertheless, Dr. Barnes acknowledged she has never requested Petitioner's records for any reason (Tr. 51, 52, 59), and has not sought them to date despite an express invitation to do so (Doc. # 12 Ex. 1).  Finally, Claire Barabash, Ph.D., a clinical psychologist and lawyer who practices in the area of special education, testified to her experience in representing students with disabilities and her access to their records.  (Pet. Ex. 8 Admin. R.; Tr. 178, 181–82, 184–87).

---

[5]These documents were admitted at the due process hearing under seal upon Plaintiff's attorney's suggestion, so as to maintain the required confidentiality.  (Tr. 646).

III.     **OPINION BELOW**

On March 10, 2006, the hearing officer issued his decision finding that Defendant was required to provide copies of Petitioner's educational records to his parents upon payment of a fee. *D.B. v. Jefferson County Bd. of Educ.*, Special Educ. No. 05–119 (Ala. Dep't of Educ., Mar. 10, 2005). After noting that the IDEA guarantees access—not copies—absent exigent circumstances, the hearing officer found that "state and local laws might give either the parent [,] or the parent and their representative [,] a right to copies of the records." *Id.* at 17. Therefore, he held that parents of exceptional students like Petitioner (as defined under the IDEA) and their counsel were entitled to copies of all the student's educational records as a matter of law under Alabama Code § 36–21–41, the Alabama Open Records Act. *Id.* The hearing officer found that this conclusion was also supported by the Jefferson County Board of Education's records policy under the Family Educational Rights and Privacy Act ("FERPA"). (Pet. Ex. 9 Admin. R.). *Id.* at 18. The hearing officer also concluded that Defendant did not engage in retaliatory conduct by refusing to provide copies of Petitioner's educational records to his parents or his counsel, since the decision not to provide copies was based upon Defendant's good faith interpretation of federal law and its own policies concerning educational records. *Id.* Thus, the hearing officer ordered Defendant to provide Mr. and Mrs. Bevis's counsel with copies of all educational records directly related to Petitioner within ten days of the decision, while allowing them to charge a fee for such copies.

Subsequently, Mrs. Bevis filed a complaint seeking her reasonable attorney fees as the prevailing party under 20 U.S.C. § 1415(i)(3)(B). Defendant filed an appeal of the hearing officer's decision pursuant to 20 U.S.C. § 1415(i)(2).

## IV.    STANDARDS OF REVIEW

### A.    Legal Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  *See id.* at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115–17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)

9

(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact, *i.e.*, facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial. The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires that the movant point out to the district court that there is an absence of evidence to support the non-moving party's case. *See Fitzpatrick*, 2 F.3d at 1115–16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest

10

on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

**B.      Court's Review of the Due Process Hearing**

In Alabama, due process hearings are conducted by impartial due process hearing officers appointed by the State Superintendent of Education. ALA. ADMIN. CODE. R. 290–8–9–.08(8)(c)2. The hearing officer's decision is a final order that entitles a party adversely affected to bring an action in either a federal district court or a state court of competent jurisdiction.  20 U.S.C. § 1415(i)(2); ALA. ADMIN. CODE R. 290–8–9–.08(8)(c)11.  The district court's review is in the nature of an appeal, but is not limited to the administrative record.  *Weiss v. Sch. Bd. of Hillsborough County*, 141 F.3d 990, 992 (11th Cir. 1998).  When a district court reviews findings and decisions made during IDEA administrative hearings, the court receives the administrative record.  The court has the discretion to hear additional evidence.  The IDEA specifically provides that the court may take additional evidence and may fashion relief that the court deems appropriate.  20 U.S.C. § 1415(c)(2); *see also Weiss*, 141 F.3d at 992; *Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1314 (11th Cir. 2003). In either event, upon a review of the pertinent record evidence, the court will render a decision based on a preponderance of the evidence.  *Dukes v. Enterprise City Bd. of Educ.*, 273 F. Supp. 2d 1252, 1256 (M.D. Ala. 2003); *see also Walker County Sch. Dist. v. Bennett*, 203 F.3d 1293, 1297-98 (11th Cir.2000).  Here the parties have submitted additional evidentiary materials and the court has taken these materials into consideration in rendering this decision.

"[T]he extent of deference to be given the administrative findings of fact is an issue left to the discretion of the district court." *Jefferson County Bd. of Educ. v. Breen*, 853 F.2d 853, 857 (11th Cir.1988); *see also Weiss*, 141 F.3d at 992 (citing *Doe v. Ala. State Dept. of Educ.*, 915 F.2d 651,

657 n. 3 (11th Cir. 1990)).  More specifically, "'findings of fact made in administrative proceedings are considered to be *prima facie* correct, and if a reviewing court fails to adhere to them, it is obliged to explain why.'"  *Dukes*, 273 F. Supp. 2d at 1256 (quoting *M.M. v. Sch. Dist. of Greenville County*, 303 F.3d 523, 531 (4th Cir.2002)); see also *G v. Fort Bragg Dependent Sch.*, 343 F.3d 295, 302 (4th Cir.2003).  The court may accept or reject the findings of the hearing officer, being careful not to substitute its judgment for that of the state educational authorities, and according the administrative decision due weight.  *Maricus W. v. Lanett City Bd. of Educ.*, 141 F. Supp. 2d 1064, 1065–66 (M.D. Ala.2001).  "Courts owe some judicial deference to local administrative agency judgments, though that's typically limited to matters calling upon educational expertise."  *Loren F.*, 349 F. 3d at 1314 (internal citations omitted) (citing *Kings Local Sch. Dist. v. Zelazny*, 325 F.3d 724, 728 (6th Cir. 2003) (less weight is due the administrative agency's determinations on IDEA matters for which educational expertise is not relevant because a federal court is just as well suited to evaluate the situation)).  The court reviews legal conclusions by the hearing officer under a *de novo* standard. *Weiss*, 141 F.3d at 991 (citing *Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 205 (1982)); *see also Maricus W.*, 141 F. Supp. 2d at 1065–66.

The administrative ruling from which this appeal was taken did not implicate a free appropriate public education ("FAPE") or other substantive issues requiring educational expertise. Furthermore, the hearing officer's decision did not turn on a specific factual determination, but was purely an interpretation of state law as it applied in the IDEA context.  Therefore, even if it accepts all of the hearing officer's factual determinations as true (which it need not do), the court owes little deference to the officer's legal ruling or its underlying rationale, which are challenged here.

12

### C.      Summary Judgment Standards in the IDEA Context

As the Seventh Circuit has noted, "summary judgment [in IDEA cases] has been deemed appropriate even when facts are in dispute, and is based on a preponderance of the evidence." *Loren F.*, 349 F.3d at 1313 (quoting *Beth B. v. Van Clay*, 282 F.3d 493, 496 n. 2 (7th Cir.2002)).  However, "the usual F[ederal] R[ule of] Civ[il] P[rocedure] 56 summary judgment principles do not apply in an IDEA case." *Id.*  Because nothing prevents "district judges from factfinding under [Rule] 52 in IDEA cases," their decisions are "better described as judgment[s] on the record." *Id.* at 1313–14 (quotation omitted); *see also Slama v. Indep. Sch. Dist. No. 2580*, 259 F. Supp. 2d 880, 882 (D. Minn.2003) (on motion for judgment on the record in an IDEA suit, the district court "may make a decision on the merits, even if there exist, upon the stipulated [r]ecord, disputed issues of material fact") (citation omitted).  "In reviewing the administrative record," the district court "may . . . accept the conclusions of the [Administrative Law Judge]  . . . that are supported by the record and reject those that are not." *M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1157 (11th Cir. 2006).

All this means that the usual Rule 56 summary judgment principles do not apply in an IDEA case.[6]  This is not surprising because no IDEA jury trial right exists.  *See Whitehead v. Sch. Bd. for*

---

[6]Though "[s]ummary judgment procedure does not serve to prevent a court from hearing evidence pertaining to questions of material fact," *Victoria L. v. Dist. Sch. Bd.*, 741 F.2d 369, 372 (11th Cir.1984), it is, at bottom, "simply a procedural vehicle requiring [the district judge] to decide . . . [the IDEA] action on the basis of the administrative record." *Suzawith v. Green Bay Area Sch. Dist.*, 132 F. Supp. 2d 718, 724 (E.D. Wis.2000); *see also Hanson v. Smith*, 212 F. Supp. 2d 474, 480–81 (D. Md. 2002).

Although many courts cite to the commonly applied Rule 56 standards without acknowledging these distinctions, *see, e.g.*, *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 220–21 (2d Cir. 2003), there is "nothing to prevent district judges from factfinding under [Rule] 52 in IDEA cases—even on a record bearing evidence tendered in addition to the IDEA administrative record—subject to the requirement that they accord 'due weight' to administrative findings."

13

*Hillsborough Co.*, 918 F. Supp. 1515, 1518 (M.D. Fla.1996) (because only injunctive relief and equitable damages are allowed under the IDEA, there is no jury trial right for IDEA claimants). Indeed, the district court often conducts "a bench trial on a stipulated record." *Slama*, 259 F. Supp. 2d at 882 (quotations and citations omitted).

## V.   DISCUSSION

### A.   The Decision of the Hearing Officer that Plaintiffs Are Entitled to Copies of D.B.'s Records is Erroneous and Due to be Reversed.

#### 1.   The Decision of the Hearing Officer is Void for Lack of Subject Matter Jurisdiction.

The hearing officer granted Plaintiff relief under the Alabama "Open Records Statute." ALA. CODE § 36–12–40, § 36–12–41 (1975). Although the court also concludes that the hearing officer's decision is incorrect as a matter of law, as a threshold matter, the court finds the hearing officer had no authority to decide the case on grounds not authorized by the terms of the regulations under which he was appointed.

##### a.   The Hearing Officer Has Limited Jurisdiction and Authority and the Subject-Matter of this Litigation Was Not Within The Scope of His Authority.

It is axiomatic that administrative officers, including such officers who are acting in a judicial role, may only exercise such authority as is conferred upon them by the terms of the law under which they are appointed. *Ex parte State Health Planning and Dev. Agency*, 855 So.2d 1098, 1103 (Ala. 2002) ("Because an administrative agency may not expand its own jurisdiction by its interpretation of a statute [or by any other means], courts deciding whether to give deference to an agency's interpretation of a statute must first determine whether the agency's interpretation is operative within

_____

14

the agency's particular sphere of statutory authority").  Therefore, administrative tribunals do not enjoy plenary jurisdiction.  In the instant context, due process hearing officers serve under specific administrative regulations approved by the Alabama State Board of Education and promulgated by the Alabama Department of Education, as well as approved under provisions of the IDEA.  20 U.S.C. § 1412(a)(6)(A) (state eligible for assistance if it submits a plan that provides parents with procedural safeguards specified in the IDEA); *Arlington Central School District v. Murphy*, 126 S. Ct. 2455, 2458–59 (2006).

The hearing officer's substantive and procedural authority is set forth in Alabama Administrative Code Rule 290–8–9–.08(8) and, in particular, Rule 290–8–9–.08(c)11. Substantively, the governing regulation plainly limits the hearing officer's authority to questions implicating FAPE: "A decision made by the hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education."  ALA. ADMIN. CODE R. 290–8–9–.08(8)(c)11.(iv)(I)(X).  Thus, the hearing officer is only authorized to determine questions of FAPE as that term is defined in the regulation and under supervening federal law.

Reinforcing this limitation is the language used in the State Department of Education's letter appointing Officer Romine: "The hearing officer is appointed under the Individuals with Disabilities Education Improvement Act of 2004 and is authorized to issue rulings only under this statute and Alabama Act 106 (ALA. CODE § 16–39–1 *et seq.*) and no other."  (Pet. Ex. A. Admin. R. 80–81). This court finds that the hearing officer's decision that parents are entitled to copies of exceptional

students' educational records under a state law not associated with IDEA or its state implementing regulations, ALA. CODE § 16–39–1 *et seq.* (Alabama Act 106), did not implicate Petitioner's right to a FAPE, and therefore was not within the officer's jurisdiction.

>    **b.    Plaintiff Failed to Allege a Justiciable Controversy That Could Be Decided at Any Due Process Hearing.**

Furthermore, the underlying hearing request failed make allegations that amounted to a justiciable controversy that could be resolved at any due process hearing.  Under governing Alabama regulations, due process hearings can be requested "when parents or the education agency disagree with matters pertaining to the identification, evaluation, educational placement of their child, and/or the provision of a free appropriate public education . . . ."  ALA. ADMIN. CODE R. 290–8–9–.08(8)(b)12.(c).  Clearly, the statute contemplates the use of due process hearings to settle particularized controversies related to educational decisions—not to proclaim sweeping interpretations of state and federal law.  This conclusion is reinforced by language setting forth the procedures that must be followed in requesting an impartial due process hearing:

>    When the parent, the attorney representing the parent, or an official from the education agency, files a written request, the request must include the name of the child, the address of residence of the child, the name of the school the child is attending, a description of the nature of the problem of the child relating to the proposed or refused initiation or change, including facts relating to the problem, and a proposed resolution of the problem to the extent known and available to the party at the time.

ALA. ADMIN. CODE R. 290–8–9–.08(8)(c)1.(ii).  The significant passage for the purposes of analyzing this issue is the language that requires "a description of the nature of the problem of the child relating to the proposed or refused initiation or change."  The "proposed or refused initiation or change" refers to "the identification, evaluation, educational placement, or the provision of a free

appropriate public education to [the] child."  ALA. ADMIN. CODE R. 290–8–9–.08(4)(b)1.; *see also*

ALA. ADMIN. CODE R. 290–8–9–.08(8)(c)8.(i)(I) (parents' responsibility in an impartial due process

hearing process includes "[r]equest[ing] an impartial due process hearing that pertains to the

identification, evaluation, educational placement, and/or the provision of a free appropriate public

education").   No such proposed change (or refusal to make such a change) regarding "the

identification, evaluation, educational placement, or the provision of a free appropriate public

education to [the] child" was presented to the hearing officer for determination.  ALA. ADMIN. CODE

R. 290–8–9–.08(4)(b)1.

> **c.**    **The Controversy Alleged by Plaintiff Should Have Been
> Addressed Using the Alternate "Complaint Procedure" Under
> Alabama Regulations, Not in a Due Process Hearing.**

        The issue presented in the due process hearing was whether Defendant's interpretation and

application of the records access requirements violated the terms of the IDEA, state law

implementing regulations, or any other of Petitioner's or Plaintiff's rights under state or federal law.

Stated differently, the hearing officer was asked to determine if Defendant's failure to provide copies

of all Petitioner's educational records to Plaintiff "[violated] a federal or state law or regulation

pertaining to a child's [here, Petitioner's] special education program."  That type of controversy

comes under the alternate due process remedy made available to parents in Alabama, using the

"complaint procedure" set forth in Alabama Administrative Code Rule 290–8–9–.08(8)(a).  That

provision does not necessarily require a showing that a FAPE has been denied to a student or that

an issue exists regarding a proposal or refusal to change the identification, evaluation, educational

placement, or the provision of a FAPE.  The rule allows complaints to be filed by individuals,

agencies, or organizations within or outside the state.    ALA.  ADMIN.  CODE  R.

290–8–9–.08(8)(a)1.(ii).  In fact, this alternate "complaint procedure" is specifically designed as a catch-all procedure for addressing any violation of federal or state law relating to a special education program.  ALA. ADMIN. CODE R. 290–8–9–.08(8)(a).  Thus, the issue involved in this case—whether the right to examine records is the equivalent of or necessarily entails the right to receive copies of records as a matter of law—should have been brought under this alternate complaint procedure; consequently, the hearing officer did not have jurisdiction to decide the matter in question and his ruling is void.

> **d.    The Alabama Open Records Act Was Not Timely Raised by Plaintiff as a Basis for the Hearing Officer's Decision.**

Even if the hearing officer had subject matter jurisdiction to decide a due process hearing request on the basis of a state statute unrelated to the federal law under which the hearing was ostensibly requested (and he did not), there is an alternative reason to reject his ruling: he had no authority to render the ruling on the grounds he relied upon because they were not timely or properly raised.  As noted, applicable administrative procedures require the parent requesting a due process hearing to specify in that request a description of the nature of the problem giving rise to the request.  ALA. ADMIN. CODE R. 290–8–9–.08(8)(c)1.(ii).  The due process request may be amended, but only upon the written consent of the party not filing the request or upon the hearing officer's grant of permission at least five days prior to the hearing.  ALA. ADMIN. CODE R. 290–8–9–.08(8)(c)1.(iv).  Moreover, the regulations expressly preclude consideration of issues at the due process hearing that were not raised in the notice by which the hearing was requested.  ALA. ADMIN. CODE R. 290–8–9–.08(8)(c)6.

In this case, no issue pertaining to the Alabama Open Records Act (or claim for relief based thereon) was raised in any initial or amended notice requesting the due process hearing. (Pet. Ex. A Admin. R. 80–81). The only request for a due process hearing or notice of such hearing appearing in the administrative record is a letter from Plaintiff's counsel to the State Superintendent, and this letter mentions only the IDEA itself. (Pet. Ex. A Admin. R. 80–81). Even if the state's implementing statutes and regulations could also provide a basis for the complaint or issues therein, that still does not enlarge the subject matter of the due process hearing to include the Alabama Open Records Act, as it was not mentioned anywhere in Plaintiff's notice. Indeed, the only mention of the Open Records Act was found in the last paragraph of Plaintiff's memorandum of law that was served shortly before the hearing commenced. (Tr. 32; Pet. Prehr'g Br. 6–7). Therefore, the court determines that because the Alabama Open Records Act was neither mentioned as an issue in Plaintiff's notice requesting the due process hearing, nor presented five days prior to the hearing so that the hearing officer could grant permission to amend such notice to include it, it was not timely raised and thus was an improper issue to be considered at the hearing and could not properly serve as the basis for the hearing officer's decision.

### 2.   The Decision of the Hearing Officer is Incorrect on the Merits.

As noted above, the court has determined that the hearing officer: (1) did not have the authority to entertain those issues that the court has already found to be outside of his statutory jurisdiction; (2) improperly addressed the record access issues in a due process hearing rather than under the more generalized complaint procedure; and, (3) the Plaintiff's claims under the Alabama Open Records Act were not asserted on a timely basis before the hearing officer. Alternatively, the court determines that his decision on the merits was incorrect. After a review of the IDEA and its

19

implementing regulations, the court finds no statute commanding that education agencies provide

the parents with copies of all of a child's educational records.  Rather, the court concludes, the

relevant legislation and rules show that both Congress and the Alabama Legislature preferred to

ensure parents' access to such records.[7]

### a.   Under Federal and State Statutes, Regulations, and Authoritative Interpretations, Parents Do Not Have an Unqualified Right to Copies of All of a Student's Educational Records.

The United States Supreme Court recently reaffirmed the applicability of the "plain meaning"

rule of statutory construction in the context of the Individuals with Disabilities Education Act:

> We have "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut*

---

[7]Not to trivialize Plaintiff's legal right and practical need for information regarding her son's educational plan and development, the court notes that she has already received a great deal of information through a variety of means as required by the IDEA and its state implementing regulations.  The IDEA expressly mandates that a parent must receive copies of certain limited documents, including a student's Individualized Educational Plan (IEP), a Multi-Educational Discipline Committee form (MEDC) and a Notice of Parents' Rights under IDEA.  20 U.S.C. §§ 1414(b)(4)(B), 1414(d)(3)(F), 1415(d)(1), 1415(k)(1)(H).  Plaintiff does not dispute that she received copies of these documents.  (Tr. 125).  State implementing regulations also ensure that parents receive copies of certain documents as required by the IDEA.  *See, e.g.*, ALA. ADMIN. CODE R. 290–8–9–.05(12)(f) (individualized education programs); ALA. ADMIN. CODE R. 290–8–9–.04(2)(a) (eligibility decisions and evaluation results).  Moreover, under both state and federal law, parents are entitled to request and receive an explanation of their child's records from school officials.  34 C.F.R. § 99.10(c); 34 C.F.R. § 300.562(b)(1); ALA. ADMIN. CODE R. 290–8–9–.08(2)(c)4.

Pursuant to Alabama regulations promulgated under the IDEA, parents are entitled to advance notice of (and an opportunity to participate in and object to) almost all meetings convened to discuss or decide upon eligibility or services, and to *post hoc* written notice of all decisions made with regard to such matters.  *See, e.g.*, ALA. ADMIN. CODE R. 290–8–9–.05(12) (providing for parental involvement in IEP development); ALA. ADMIN. CODE R. 290–8–9–.02(1)(a) (parental consent required for evaluation); ALA. ADMIN. CODE R. 290–8–9–.04(1) (parent included in meeting to determine eligibility); ALA. ADMIN. CODE R. 290–8–9–.08(4)(b)1. (written notice of any change in identification, evaluation, educational placement, or provision of a FAPE must be given to parent).  They are also entitled to receive a detailed written statement that summarizes virtually every substantive and procedural right conferred by the IDEA.  ALA. ADMIN. CODE R. 290–8–9–.08(4)(b)2.

> *National Bank v. Germain*, 503 U.S. 249, 253–254 (1992).  "When the statutory
> language is plain, the sole function of the courts—at least where the disposition
> required by the text is not absurd—is to enforce it according to its terms."  *Hartford
> Underwriters Insurance Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)
> (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989), in
> turn quoting *Caminette v. United States*, 242 U.S. 470, 485 (1917); internal quotation
> marks omitted).

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 126 S. Ct. 2455, 2459 (2006).

The relevant statutory provision governing disposition of the issue before the court requires

state and local agencies that receive financial assistance under authority of the IDEA to "establish

and maintain procedures in accordance with this section . . . ."  20 U.S.C. § 1415(a).  Among the

types of procedures required is "[a]n opportunity for the parents of a child with a disability to

*examine* all records relating to such child . . . ."  20 U.S.C. § 1415(b)(1) (emphasis supplied).

Therefore, the fundamental question before this court is whether the word "examine" means or

necessarily implies a right to receive copies of educational records.

The word "examine" is taken to have its plain meaning, that is "[t]o observe carefully or

critically; inspect."  AMERICAN HERITAGE COLLEGE DICTIONARY 485 (4th ed. 2002).  This is the

sense in which it has been used in the implementing federal regulations: "Each participating agency

shall permit parents to *inspect and review* any education records that are collected, maintained, or

used by the agency under this part."  39 C.F.R. § 300.562(a) (emphasis supplied).  Corresponding

Alabama regulations are in accord: "Parents may *inspect and review* all educational records relating

to identification, evaluation, and educational placement of their child that are collected, maintained,

or used by the educational agency."  ALA. ADMIN. CODE R. 290–8–9–.08(2)(c)(1) (emphasis

supplied).

21

The only reference to "copies" of records in this context is not found in the IDEA itself, but in its implementing regulations:

> (b) The right to inspect and review education records under this section includes—
> . . . (2) The right to request that the agency provide copies of the records containing the information *if failure to provide those copies would effectively prevent the parent from exercising the right to inspect and review the records*[.]

34 C.F.R. § 300.562(b)(2) (emphasis supplied). Alabama administrative regulations are similar: "Upon request, parents must be provided copies of their child's records, *when failure to do so would effectively prevent the parents from exercising their right to access*." Ala. Admin. Code. R. 290–8–9–.08(2)(c)3. (insuring "*[a]ccess* to records by parents and their representatives") (emphasis supplied). The right of "access" as used in both the federal and state regulations is expressed in terms of permission to "inspect and review" the records. Thus, under either the federal or state regulatory formulation, there is no right to receive copies of a student's records unless circumstances exist (and are demonstrated) that would effectively prevent a physical examination of the documents.

A series of administrative and regulatory decisions, pronouncements, and interpretive opinions have consistently explained that any claim of right to copies of all a student's educational records is viable only upon a showing that physical access to the documents is not possible. One example of such a circumstance would be geographic remoteness of the records. *See* Assistance to States for the Education of Children With Disabilities & Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46540–01, 46645 (Aug. 14, 2006) ("The right to inspect and review records includes the right to a response from the agency to reasonable requests for explanations and interpretations of the records; the right to request that the agency provide copies of the records containing the information if failure to provide those copies would effectively prevent the parent

22

from exercising the right to inspect and review the records; and the right to have a representative of the parent inspect and review the records. To the extent that the commenters may have been concerned about free copies of evaluation documents that would not be provided under the above regulations, we decline to regulate further, as we believe that the cited provisions adequately balance the interests of the parents for free copies and the public agencies in controlling costs."); Assistance to States for the Education of Children With Disabilities & Preschool Grants for Children With Disabilities, 71 Fed. Reg. 46540–01, 46688 (Aug. 14, 2006) (declining to make the requested change in the regulations so as to allow parents to have a right to obtain a free copy of all education records because "such as change would impose a significant new burden on public agencies that is not necessary"); Assistance to States for the Education of Children with Disabilities & the Early Intervention Program for Infants & Toddlers with Disabilities, 64 Fed. Reg. 12, 406, 12, 641–42 (Mar. 12, 1999) (regulations envision that copies should only be given if failure to do so would effectively prevent a parent from inspecting the records; for example, when the parent lives outside the commuting distance of the school); U.S. Dep't of Educ., *Family Educational Rights and Privacy Act (FERPA)*, Feb. 17, 2005, http://www.ed.gov/print/policy/gen/guid/fpco/ferpa/index.html ("[s]chools are not required to provide copies of records unless, for reasons such as great distance, it is *impossible* for parents of eligible students to review the records") (emphasis supplied); Letter from LeRoy S. Rooker, Director, Family Policy Compliance Office, U.S. Dep't of Educ. to Rep. C. L. "Butch" Otter (July 29, 2002), *available at* www.ed.gov, saved in archived files as otter0729023q2002 (where a parent lives outside the commuting distance of the school "a permissible arrangement would be for the school to send the records to a school near the parent.  The parent could then go to that school to inspect and review the records."); Letter to Longest, 213 Educ.

23

Handicapped L. Rep. 173 (Office of Special Educ. & Rehabilitative Servs. ("OSERS") 1988) (where parent had previously visited the school and inspected and reviewed the records in person, there is no basis for concluding that the parent would have had the right to obtain a copy of the records had the parent requested it); Letter to Anonymous, 213 Educ. Handicapped L. Rep. 188 (OSERS 1989).

In fact, nothing in the statutes, regulations, or any authoritative interpretations thereof supports Plaintiff's argument that—absent extenuating circumstances such as geographic remoteness —provision of copies of all Petitioner's educational records is: (1) necessary to secure the child's right to a FAPE; (2) indispensable to "meaningful access;" or (3) essential to promoting the IDEA's policy of placing parents and educational agencies "on a level playing field." Plaintiff's assertion that the terms "examine" or "inspect and review" mean "obtain copies of" in order to fulfill the statutory mandate requiring Plaintiff have access to the records rests principally on two related premises: that parents cannot fully understand the meaning and significance of educational records without the benefit of clinical specialists and lawyers, and that specialists and lawyers cannot render meaningful advice and assistance to the parents without copies of the educational records being immediately available to them. These arguments are legally insufficient to require the provision of copies of Petitioner's educational records for at least two reasons.

First, for the reasons stated above, requiring Defendant to provide copies of all educational records for Plaintiff's proffered reasons is at odds with the plain text of the statute and its corresponding regulatory provisions. *See* 20 U.S.C. § 1415(b)(1); 34 C.F.R. § 300.562(b)(2); ALA. ADMIN. CODE R. 290–8–9–.08(2)(c)3. Moreover, applicable regulations require that the student's education records be made "available to the parent(s) and/or their designated representatives, upon request" after the due process hearing request has been filed. ALA. ADMIN. CODE R.

24

290–8–9–.08(8)(c)9.(i)(V).  If, as Plaintiff contends, the right to "examine," or "inspect and review" implies a right to copies upon demand outside the context a due process hearing request being filed, then the obligation to make the same records available to parents after the due process request has been filed is meaningless surplusage—a uniformly disfavored interpretational result.  *See, e.g.*, *Harry v. Marchant*, 291 F.3d 767, 771 (11th Cir. 2002); *United States v. Canals-Jimenez*, 943 F.2d 1284, 1287 (11th Cir. 1991).

      **b.**    **IDEA Policy Seeks to Discourage Unnecessary and Expensive Litigation.**

The very features of the IDEA that are intended to promote and strengthen direct parental involvement in the process[8] are intended to discourage premature and counterproductive litigation.[9] *See* 20 U.S.C.A. § 1415(f)(1)(B) (school attorney only allowed at resolution session if parent is accompanied by attorney); 34 C.F.R. Part 300, App. A (answer to question 29) (presence of school's attorney or the parent's attorney at IEP meeting is discouraged because it contributes to a potentially adversarial atmosphere); *see also* 20 U.S.C.A. § 1400(c)(8) ("Parents and schools should be given expanded opportunities to resolve their disagreements in positive and constructive ways."); H.R. REP. No. 108–77 (2003), *republished at* 2003 WL 1986848 at *85 ("Litigation under the [IDEA] has

---

[8]Or, as Plaintiff prefers to put it, this reference is to those features designed to "place parents and [Defendant] on an equal playing field" or to the "elaborate procedural mechanism which was enacted to assure full and meaningful parental participation in the design and implementation of a student's educational program."  (Doc. # 14 at 22).

[9]Plaintiff's argument that lawyers are essential to parents' comprehension of their child's rights under the IDEA and that lawyers must have copies to effectively advise these parents seems, to the court, to advocate litigation—or at the very least extensive attorney involvement—in IDEA disputes. (Doc. # 14 at 13, 28–29, 33, 35, 41; Tr. 5, 13–16, 21, 173–77, 187–88, 190–91, 198–99, 203–07, 230–32, 237–40).  Such an approach would benefit the legal profession but would not further the goal of discouraging premature and counterproductive litigation.

taken the less productive track of searching for technical violations by the school districts rather than being used to protect the substantive rights of children with disabilities.  This type of litigation breeds an attitude of distrust between the parents and the school personnel rather than working cooperatively to find the best education placement and services for the child."); H.R. REP. NO. 108–77, *republished at* 2003 WL 1986848 at *113 (2003) (opportunity to mediate special education disputes has reduced litigation and restored trust between parents and schools); H.R. REP. NO. 108–77 (2003), *republished at* 2003 WL 1986848 at *114 (resolution sessions are needed to improve communication between schools and parents and to help resolve disputes before a due process hearing occurs; most cases should be easily resolved if the school is given notice of the issues); 2004 U.S.C.C.A.N. S43, *republished at* 2004 WL 3670985 at *S44 (Presidential signing statement of President Bush) (IDEA reauthorization creates opportunities to resolve problems early so there is less litigation and focus can be on children and parents); Conference Report on H.R. 1350, Individuals with Disabilities Education Improvement Act of 2004, 150 CONG. REC. H10006–01 (Nov. 19, 2004) (statement of Sen. Sessions) ("H.R. 1350 restores trust and constructive dialogue to the relationship between parents and school personnel promoting an earlier resolution to problems before they end up in court.  This legislation creates the opportunity for a resolution session within 30 days of a complaint being filed to quickly resolve the problem.  The constant threat of litigation creates an atmosphere of distrust between parents and schools, an environment that harms everyone involved."); 150 CONG. REC. H10006–01 (Nov. 19, 2004) (statement of Rep. Boehner) (there is a need to encourage cooperation to do what is best for students, to restore trust between parents and schools and to cut down on damaging lawsuits); 150 CONG. REC. S5394–01 (May 13, 2004) (statement of Rep. Gregg) (we have created a series of initiatives to create opportunities to resolve

issues in a comfortable manner so resources can be focused on education and not on hiring an attorney); Improving Education Results for Children with Disabilities Act of 2003, 149 CONG. REC. H3458–01 (Apr. 30, 2003) (statement of Rep. McKeon) ("[E]xcessive and expensive litigation continues to be a large component of the special education system.  It seems that all to often decisions are reached are those that benefit the attorney the most . . . the legislation does make significant improvements by encouraging the use of mediation as soon as possible, creating opportunities for binding arbitration . . . ."); 149 CONG. REC. H3458–01 (Apr. 30, 2003) (statement of Rep. Carter) (mediation and resolution sessions will reduce litigation and restore focus on educating children).  Similarly, Plaintiff's assertion that third-party service providers require copies of records in order to perform either a treatment or advisory function finds no support in either the law or the record.[10]

    **c.**  **The Hearing Officer Misapplied the Alabama Open Records Act.**

  After acknowledging that neither the IDEA nor Alabama law implementing it require copies of all educational records be provided to parents, the hearing officer based his decision on the

---

  [10]One of Petitioner's own psychologists belied the premise of Plaintiff's argument when she candidly acknowledged that she had never sought copies of his educational records (Tr. 51–52, 57, 59–60, 72).  Indeed, no outside clinician has yet requested records, despite a written offer on behalf of Defendant to make such records available.  (Doc. # 12 Ex. 1).

  Furthermore the court notes an inherent contradiction in Plaintiff's assertion that a specialist performing an independent evaluation needs copies of all the child's records to complete a competent evaluation.  By its nature, an "independent" educational evaluation entails the administration of tests and assessments that should not be influenced by school assessments.  Moreover, if the parent seeks to have such an evaluation paid for by the educational agency, the request must be based on a disagreement with an existing school board evaluation. 20 U.S.C.A. § 1415(b)(1); 34 C.F.R. § 300.502; ALA. ADMIN. CODE R. 290–8–9–.02(3)(d).

Alabama Open Records Act.  The statute reads in pertinent part: "Every citizen has a right to inspect and take a copy of any *public* writing of this state, except as otherwise expressly provided by statute."  ALA. CODE § 36–12–40 (1975) (emphasis supplied).  Additionally, that Act provides:

> Every public officer having the custody of a public writing which a citizen has a right to inspect is bound to give him, on demand, a certified copy of it, on payment of the legal fees therefor, and such copy is admissible as evidence in like cases and with like effect as the original writing.

ALA. CODE § 36–12–41 (1975).

The hearing officer misapplied the statute in finding that disabled students' educational records are "public writings" within the meaning of Alabama Code §§ 36–12–40 and 36–12–41.  The distinction between a "writing" (or "record") and a *public* writing or record is critical in this context.  A public writing or record is one in which members of the public have an interest as citizens and taxpayers.  For example, in *Stone v. Consolidated Publishing Co.*, 404 So. 2d 678 (Ala. 1981), the Alabama Supreme Court described a "public writing" as "such a record as is reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by citizens."  404 So. 2d 678, 681; *see also Bedingfield v. Birmingham News Co.*, 595 So.2d 1379, 1380 (Ala. 1992).  More tellingly, *Stone* and its progeny have routinely recognized exceptions to the Open Records Act that restrict its application with respect to matters pertaining to individuals that are inherently confidential.  *Stone*, 404 So. 2d at 681.  In fact, *Stone* directs the judiciary to "apply the rule of reason" to determine when a document should be exempted from disclosure under the Act due to its confidential nature, citing "personnel records" as an example of a confidential record.  *Id.*; *see also Walsh v. Barnes*, 541 So. 2d 33, 35 (Ala. Civ. App. 1989).  Since the records in question could not by any plausible stretch be

28

deemed to contain information in which the general public has a *bona fide* interest or right to inspect, the court concludes that a student with disabilities' individual educational record is a confidential document within the meaning of *Stone*, and therefore is not subject to disclosure under the Alabama Open Records Act. Myriad statutory and regulatory pronouncements support the conclusion that such records are confidential. *See* 20 U.S.C.A. § 1232g(b); 20 U.S.C.A. § 1417(c); 34 C.F.R. § 300.563; 34 C.F.R. § 300.564; 34 C.F.R. § 300.127; 34 C.F.R. § 561(a)(4); 34 C.F.R. § 300.571; 34 C.F.R. § 300.572; 34 C.F.R. § 300.574; ALA. CODE § 16–39–8 (1975) (written record of exceptional child's case history is "confidential record" that is available for inspection by school officials and faculty only with consent of the principal).

### B. The Portion of the Hearing Officer's Decision Finding That Defendants Did Not Retaliate Against Plaintiffs Is Affirmed.

There is no statute or regulation recognizing or prohibiting "retaliation" in the IDEA context. Therefore, at the outset, the court must be clear in stating that the following discussion is in no way meant to establish or acknowledge the existence or viability of such a claim under federal or Alabama law. However, for the sake of completeness, the court will briefly address Plaintiff's retaliation claim. In examining retaliation claims in the context of Title VII or 42 U.S.C. § 1983, the court should consider: (1) whether an individual engaged in a protected activity; (2) whether the school district had notice of the protected activity; (3) whether the school district took some contemporaneous or subsequent adverse action; and, (4) whether there was a causal connection between the protected activity and the adverse action. *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir.1993). Thus, although Plaintiff engaged in what could be termed a "protected activity" by requesting a due process hearing on the issue, Defendant's failure to provide copies of

29

all Petitioner's records cannot be considered an "adverse action" for the purposes of retaliation, since Plaintiff did not have a right to copies of all these records in the first place.  Furthermore, Defendant's refusal to provide copies of all Petitioner's educational records was not motivated by Plaintiff's request for a due process hearing.  Instead, this action was based upon Defendant's interpretation of the statutes and case law (which this court now finds is correct); therefore, the refusal to provide copies of the records was not "causally connected" to the protected activity.

## V.   CONCLUSION

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. # 10) is due to be granted and Plaintiff's Counter-Motion for Judgment on the Record (Doc. # 13) is due to be denied.  The decision of the Due Process Hearing Officer is reversed as to the hearing officer's decision that Petitioner's parents and their counsel were entitled to copies of all Petitioner's education records as a matter of law under Alabama Code § 36–21–41, and it is affirmed insofar as it found that Defendant did not engage in retaliatory conduct by refusing to provide copies of Petitioner's educational records to his parents or his counsel.  As she is no longer considered a "prevailing party" under Federal Rule of Civil Procedure 54(d), Plaintiff is not entitled to her costs and attorneys' fees under 20 U.S.C. § 1415(i)(3)(B).[11]  A separate order in accordance with this opinion will be entered.

**DONE** and **ORDERED** this _____31st_____ day of January, 2007.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[11]Here the court analogizes to a plaintiff's initial success in prosecuting racial discrimination claims under 42 U.S.C. § 1988 at the trial level.  If reversed on appeal, however, the plaintiff is no longer considered the "prevailing party" under Rule 54(d), and, therefore, is not entitled to attorney's fees.  *See, e.g.*, *Jones v. Diamond*, 594 F.2d 997, 1026–28 (5th Cir. 1979); *see also Bell v. Bd. of County Comm'rs of Jefferson County*, 451 F.3d 1097, 1102 (10th Cir. 2006).